IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LINDA LEVINE and SUSAN LIEBELER, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 20-1108 ) |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Presently before the Court is the Motion to Dismiss Amended Complaint and brief in support filed by Defendant State Farm Fire and Casualty Company (Docket Nos. 15, 16), the response and brief in opposition thereto filed by Plaintiffs Linda Levine and Susan Liebeler (Docket Nos. 17, 18), and Defendant's reply (Docket No. 19). For the reasons set forth herein, Defendant's motion to dismiss is granted.

**I.    Background**

As alleged in the First Amended Complaint ("Amended Complaint"), on or about July 25, 2019, Plaintiffs Linda Levine ("Ms. Levine") and Susan Liebeler ("Ms. Liebeler") were joint owners of a home located at 147 Shannon Drive in New Castle, Lawrence County, Pennsylvania ("the Shannon House"). (Docket No. 11, ¶ 6). Ms. Levine resided in the Shannon House on a full-time basis at the time of the events described in the Amended Complaint, and Ms. Liebeler is a resident of California. (*Id.* ¶¶ 2, 6). According to Plaintiffs, "[o]n or about July 25, 2019, Ms. Levine noticed significant structural damage to one of the walls in the Shannon House's basement," and more specifically, that "the wall was swelling, cracked, and bowing inward." (*Id.*

¶ 7.). The Shannon House's basement is described as being "partially below the ground with four foundation walls," with each foundation wall extending "between five and twelve inches above the surface of the ground," and with "the portion of each foundation wall extending above the surface of the ground (including the wall that Ms. Levine observed to be bowing inward on July 25, 2019)" being "exposed to the elements on the exterior side." (*Id.* ¶ 8). As further alleged, the foundation wall area at issue was "visible to the naked eye from the interior of the basement and was not obstructed or concealed from view by any objects." (*Id.* ¶ 9). The Amended Complaint also avers that "[t]hroughout the six to eight months preceding July 25, 2019, including the winter months, the area in which the Shannon House is located, including the Shannon House itself, experienced significant and atypically high rainfall." (*Id.* ¶ 14).

As further alleged, the Shannon House was insured on July 25, 2019 "under a policy and/or contract of homeowners insurance issued by" Defendant State Farm Fire and Casualty Company ("State Farm") "to and for the benefit of Plaintiffs, with a policy number of 38-BJ-5559-4" (the "Policy").[1] (Docket No. 11, ¶ 15). That same day, Ms. Levine reported the damage to the foundation wall to State Farm and initiated a formal claim under the Policy. (*Id.* ¶ 19). The next day, July 26, 2019, State Farm claim specialist David C. Smilek ("Mr. Smilek") visited the Shannon House and Ms. Levine in response to her claim. (*Id.* ¶ 20). The Amended Complaint alleges that Mr. Smilek spent no more than 20 to 30 minutes at the Shannon House, and no more than ten minutes observing and examining the house, during which time he did not conduct testing or take measurements. (*Id.* ¶¶ 21, 23, 24). At the end of his visit, "Mr. Smilek told Ms. Levine that the Homeowners Policy did not cover the damages to the Shannon House," and the following

---

[1]   As averred in the Amended Complaint, State Farm is an Illinois corporation with its principal place of business in the State of Illinois, and "is licensed to sell homeowners insurance policies and/or homeowners insurance contracts in the Commonwealth of Pennsylvania." (Docket No. 11, ¶ 3). A copy of the Policy at issue in this case is attached to the Amended Complaint as Exhibit A. (Docket No. 11-1).

day, July 27, 2019, State Farm issued a formal letter addressed to Ms. Levine and signed by Mr. Smilek (the "denial letter") in which State Farm denied any and all coverage under the Policy for the losses described in her claim.  (*Id.* ¶¶ 24, 26, 28).  Plaintiffs allege that the denial letter attributed the damages that Ms. Levine had reported to "'hydraulic pressure, ground movement, latent defect, and possible sink hole damage, that is causing your foundation walls to crack, bow, lean and move inward into your basement,'" and asserted that those damages were not covered by the Policy.  (*Id.* ¶ 26 (quoting the denial letter)).

Plaintiffs further aver that at or about the same time they initiated their claim with State Farm, they also initiated a mine subsidence claim under an insuring agreement issued by the Pennsylvania Department of Environmental Protection ("PA DEP").  (Docket No. 11, ¶ 34).  According to the Amended Complaint, a PA DEP engineer conducted an investigation at the Shannon House the day before Mr. Smilek's visit and later provided Plaintiffs with a report indicating that, while the damage to the Shannon House was not caused by a sinkhole or mine subsidence, several other causes (discussed, infra) for the damage were possible, including causes covered under the Policy.  (*Id.* ¶¶ 35, 36, 38, 39).  Plaintiffs aver that they are entitled to recover damages from State Farm for losses covered under the Policy as described in the Amended Complaint, "including without limitation dwelling and loss of use coverage and the considerable costs that Plaintiffs undertook to repair the Shannon House."  (*Id.* ¶ 29).

On July 23, 2020, Plaintiffs filed a Complaint (Docket No. 1) regarding this matter, and on September 28, 2020, State Farm filed a Motion to Dismiss (Docket No. 8).  On October 16, 2020, Plaintiffs filed their Amended Complaint, which alleges two Counts: (I) Breach of Contract, and (II) Statutory Bad Faith.  (Docket No. 11).  State Farm filed its Motion to Dismiss Amended

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and Plaintiffs filed their opposition.  As State Farm's motion is fully briefed, it is ripe for decision by the Court.

## II. Standard of Review

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff, and the court must "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007).  While Federal Rule of Civil Procedure 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,'" the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555 (additional quotation marks and internal citation omitted)).  Moreover, while "this standard does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id*. (quoting *Twombly*, 550 U.S. at 555); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

It should be further noted, therefore, that in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).  The standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable

expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). Moreover, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal citation omitted)).

### III.     Legal Analysis

#### A. Count I: Breach of Contract

In Count I of the Amended Complaint, Plaintiffs allege that State Farm breached the parties' contract, the Policy, by failing to properly investigate Plaintiffs' claim and unreasonably denying that claim. State Farm, in its motion, asks the Court to dismiss Count I of the Amended Complaint, arguing that, on its face, Plaintiffs have not alleged a plausible breach of contract claim. Specifically, State Farm asserts that the losses alleged by Plaintiffs in their Amended Complaint are clearly not covered under the terms of the Policy.

In order to establish a breach of contract claim under Pennsylvania law, a plaintiff must plead and prove: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999) (citing *Gen. State Auth. v. Coleman Cable & Wire Co.*, 365 A.2d 1347, 1349 (Pa. Commw. Ct. 1976)). Upon review of the Amended Complaint, the Court notes that Plaintiffs allege (1) that the parties entered into the Policy and (3) that they incurred losses as a result of being improperly denied coverage. The Court finds, however, upon careful review of the Amended Complaint and the Policy, that Plaintiffs fail to allege (2) losses that are covered under the plain language of that Policy.

Under Pennsylvania law, the "task of interpreting a contract is generally performed by a court rather than by a jury," and the "goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument." *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983).  If a policy provision is ambiguous, it "is to be construed in favor of the insured and against the insurer, the drafter of the instrument." *Id.*  Furthermore, when a contract's language "is clear and unambiguous," the court "is required to give effect to that language." *Id.*

In SECTION I ("YOUR PROPERTY") of the Policy at issue here, the LOSSES NOT INSURED sub-section provides as follows:

1. We do not insure for any loss to the property described in Coverage A [(the Dwelling)] which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   …

   c. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a swimming pool, hot tub or spa, including their filtration and circulation systems, fence, pavement, patio, foundation, retaining wall, bulkhead, pier, wharf or dock;

   …

   l. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings . . . .

(Docket No. 11-1 at 22).

According to the Amended Complaint, the PA DEP report indicated that the damage to the Shannon House "may have resulted from excess water striking the exterior of the foundation wall and freezing, causing expansion and inward movement of the wall," and that such damage "may

6

have resulted from the fact that the damaged wall was pushed far enough inward that the ground behind the wall caused a depression behind the exterior wall," which Plaintiffs allege is a covered loss under the Policy. (Docket No. 11, ¶¶ 39, 40). Plaintiffs conclude that the damage to the Shannon House basement wall "resulted from water striking the foundation walls of the Shannon House's basement <u>above the ground</u> during periods of excess rainfall," which they assert is a covered loss under the Policy.[2] (*Id.* ¶ 41 (emphasis in original)).

Upon consideration of Plaintiffs' allegations and the plain language of the Policy, the Court finds that the claimed losses related to the damaged basement foundation wall – allegedly caused by water striking the outer foundation wall above the ground during periods of excess rainfall – are clearly excluded from coverage by Items 1.c. and 1.l of the LOSSES NOT INSURED sub-section of SECTION 1. (Docket Nos. 11, ¶ 41; 11-1 at 22). First, Plaintiffs' alleged losses related to the damaged foundation wall, as described in the Amended Complaint, clearly occurred as a result of "freezing, thawing, pressure or weight of water or ice . . . to a . . . foundation," as set forth in Item 1.c. (Docket No. 11-1 at 22). Although Plaintiffs argue that Item 1.c does not include the losses that they allege because the word "foundation" as used therein refers to that of "a swimming pool, hot tub or spa," rather than to the "foundation" of the insured dwelling, the Court disagrees. (*Id.*) The plain language of Item 1.c clearly indicates that "a swimming pool, hot tub or spa" is among the listed objects (including a "foundation") which, if "freezing, thawing, pressure or weight of water or ice" to such objects causes a loss to the insured dwelling, such loss is not covered by the Policy (while the phrase "including their filtration and circulation systems" is

---

[2] State Farm notes that, while in their original Complaint Plaintiffs previously alleged that water *below* the surface of the ground caused the loss at issue here, Plaintiffs now allege in their Amended Complaint that the water at issue was *above* the surface of the ground. Plaintiffs emphasize in their opposition brief that the water above the surface of the ground to which the Amended Complaint refers was not "surface water" (which is excluded in the Policy), but rather was rainwater directly striking the portion of the foundation that is above ground. (Docket No. 18 at 10).

merely a subordinate clause referring back to the items "swimming pool, hot tub or spa").[3] (*Id.*). Therefore, upon review of the plain language of Item 1.c of the LOSSES NOT INSURED sub-section of SECTION 1, it is clear that the Policy does not cover Plaintiff's alleged losses.

State Farm also argues that Plaintiffs' alleged losses are excluded from coverage under Item 1.l of the LOSSES NOT INSURED sub-section of SECTION 1, which refers to any loss to the insured dwelling consisting of, or occurring as a result of, "settling . . . bulging, or expansion of . . . foundation, walls, [etc.]." (Docket No. 11-1 at 22). Plaintiffs argue that the language used in Item 1.l is ambiguous and that the Court should therefore construe it in their favor because, if an insurance policy contains an ambiguous term, "'the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage.'" *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1, 14 (Pa. 2014) (quoting *401 Fourth St., Inc. v. Investors Ins. Group*, 879 A.2d 166, 171 (Pa. 2005)).

In determining whether an insurance policy provision is ambiguous, a court "must examine the questionable term or language in the context of the entire policy and decide whether the contract is 'reasonably susceptible of different constructions and capable of being understood in more than one sense.'" *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997) (quoting *Gamble Farm Inn, Inc. v. Selective Ins. Co.*, 656 A.2d 142, 143-44 (Pa. Super. Ct. 1995)). "Where there is only one reasonable interpretation of a contract, that interpretation controls because '[s]traightforward language in an insurance policy should be given its natural meaning.'" *Viera v.*

---

[3] The Court also notes the grammatical format of Item 1.c, which lists a series of singular nouns ("a swimming pool, hot tub, or spa, . . . fence, pavement, patio, foundation, retaining wall, bulkhead, pier, wharf or dock") to which the "freezing, thawing, pressure or weight of water or ice" was clearly meant to apply, while the phrase "including *their* filtration and circulation systems" is a prepositional phrase containing a possessive pronoun and a plural noun that was clearly inserted into the listed items to refer back to the phrase, "a swimming pool, hot tub or spa." (Docket No. 11-1 at 22).

*Life Ins. Co. of North America*, 642 F.3d 407, 419-20 (3d Cir. 2011) (quoting *Lawson v. Fortis Inc. Co.*, 301 F.3d 159, 162 (3d Cir. 2002)).  Moreover, "Courts should not . . . distort the meaning of the language or strain to find an ambiguity."  *Palek v. State Farm Fire & Cas. Co.*, Civ. No. 20-170, 2020 WL 5077461, at *6 (W.D. Pa. Aug. 26, 2020) (quoting *Regents of Mercersburg College v. Republic Franklin Ins. Co.*, 458 F.3d 159, 172 (3d Cir. 2006)); *USX Corp. v. Liberty Mut. Ins. Co.*, 444 F.3d 192, 198 (3d Cir. 2006) ("[I]n Pennsylvania, and no doubt elsewhere, '[c]lear policy language . . . is to be given effect, and courts should not torture the language to create ambiguities but should read the policy provisions to avoid it.'" (quoting *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n.3 (3d Cir. 1998))).

Although Plaintiffs contend that the "swelling, crack[ing], and bowing inward" of the wall alleged in their Amended Complaint is quite different in meaning from the "settling, cracking, shrinking, bulging, or expansion" of a wall or foundation that is listed as an exclusion in Item 1.l, they have provided no persuasive support for their contention, nor does the Court see a material difference in the plain meaning of the two phrases.[4]  (Docket Nos. 11, ¶ 7; 11-1 at 22).  Furthermore, given the clear, simple language of the Policy, and because straightforward policy language should be given its natural meaning, the Court finds that it would be inappropriate to torture such language to create an ambiguity in order to construe coverage for Plaintiffs here.  Therefore, the Court finds that, upon review of the plain language of Item 1.l of the LOSSES NOT INSURED sub-section of SECTION I, it is clear that the Policy does not cover the losses alleged by Plaintiffs in their Amended Complaint.

---

[4]  Specifically, the word "crack[ing]" is used in both phrases, and "expanding" is a synonym for "swelling."  *See Merriam-Webster.com Thesaurus*, Merriam-Webster, https://www.merriam-webster.com/thesaurus/swelling (last visited Sept. 30, 2021).  Also, "bowing" is defined as bending or curving (e.g., "The wall *bows* out at the bottom."), just as "bulging" is defined as "swelling or thrusting out from a surrounding or adjacent surface."  *LearnersDictionary.com Dictionary*, Merriam-Webster, https://www.learnersdictionary.com/definition/bow (last visited Sept. 30, 2021); *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/bulging (last visited Sept. 30, 2021).

Furthermore, to the extent that Plaintiffs wish to argue that they should be awarded damages based on the Policy's "Collapse" provision, that provision's language clearly does not provide coverage for the losses alleged here. Specifically, the COVERAGES sub-section of SECTION I provides that certain ADDITIONAL COVERAGES are subject to all the terms, provisions, exclusions and conditions of the Policy, and include:

> 11. **Collapse.** We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building.
>
> Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing.

(Docket No. 11-1 at 19).

Since Plaintiffs do not allege that the Shannon House fell down or fell into pieces, there is no coverage available here under that subsection of the Policy for any loss based on its "collapse." Furthermore, to the extent Plaintiffs argue that they are entitled to an award of damages because the risk of "imminent collapse" is covered under the Policy, the Court disagrees. Specifically, Plaintiffs assert that even if the Court finds that the exclusions discussed, supra, apply here, the policy language immediately following those exclusions negate their applicability. Citing to *401 Fourth Street, Inc. v. Investors Ins. Group*, 879 A.2d 166 (Pa. 2005), Plaintiffs argue, in essence, that the "imminent collapse" that has not yet occurred to their house should be characterized as a "resulting loss" from their damaged foundation wall. (Docket No. 11-1 at 24). As the Pennsylvania Supreme Court indicated in *Fourth Street*, however, the policy at issue in that case expressly covered not only loss for actual "collapse," but also for the "*risks of* direct physical loss involving a collapse." *Id.* at 174 (emphasis added). Here, in contrast, the Policy does not expressly insure against such risks, but insures only for "direct physical loss to covered property," so the

rationale set forth in *Fourth Street* does not apply. (Docket No. 11-1 at 19). Therefore, the Policy does not provide coverage for Plaintiffs' losses under an imminent collapse theory.

Finally, Plaintiffs contend that, if the conclusions and determinations in State Farm's denial letter and its motion to dismiss are accepted as accurate, State Farm would only be providing "illusory coverage" for collapse to Plaintiffs and others whose properties are covered by similar policies (i.e., benefits would not be paid under any reasonably expected set of circumstances). *See Luketich v. USAA Cas. Ins. Co.*, No. 2:20-cv-00315, 2020 WL 5669017, at *4 (W.D. Pa. Sept, 24, 2020) (discussing illusory insurance coverage and explaining that "[w]hen a court determines a provision to be illusory, it 'should be enforced in a way that protects the insured's reasonable expectations'" (quoting *St. Mary's Area Water Auth. v. St. Paul Fire & Marine Ins. Co.*, 464 F. Supp. 2d 397, 412 (M.D. Pa. 2006))). As State Farm points out, however, the Policy does provide coverage for "collapse" in limited circumstances, just not in the circumstances that are presented here. For example, a collapse caused by the weight of contents, equipment, animals or people, or the weight of ice or snow collecting on a roof is a covered loss under the Policy. (Docket No. 19 at 4 (citing Docket 11-1 at 19)). The Policy's coverage for collapse cannot, therefore, be considered illusory.

Therefore, the Court finds that Plaintiffs have failed to plead losses that are covered under the plain language of the Policy and, accordingly, that they have failed to state a plausible breach of contract claim under Pennsylvania law. Accordingly, Plaintiffs' breach of contract claim, Count I of the Amended Complaint, will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

B. <u>Count II:  Bad Faith</u>

Count II of the Amended Complaint alleges that the acts and omissions of State Farm in the handling and denial of Plaintiffs' insurance claim violated 42 Pa. C.S. § 8371 and constitute statutory bad faith.  Pennsylvania's statute regarding bad faith insurance practices provides that:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S. § 8371.

Bad faith in the context of an insurance coverage dispute has been defined as:

> any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent.  For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.,* good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Palek v. State Farm Fire and Cas. Co.*, Civ. No. 20-170, 2020 WL 5077461, at *7 (W.D. Pa. Aug. 26, 2020) (quoting *Terletsky v. Prudential Prop. and Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)).  Thus, "'to recover in a bad faith action, the plaintiff must present clear and convincing evidence (1) that the insurer did not have a reasonable basis for denying benefits under the policy

and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis.'" *Id.* (quoting *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 365 (Pa. 2017)).

In considering bad faith claims, "district courts have required more than 'conclusory' or 'bare-bones' allegations that an insurance company acted in bad faith by listing a number of generalized accusations without sufficient factual support." *Palmisano v. State Farm Fire and Cas. Co.*, Civ. Action No. 12-886, 2012 WL 3595276, at *12 (W.D. Pa. Aug. 20, 2012) (dismissing a bad faith claim where the insured asserted only general and conclusory allegations); *see also Palek*, 2020 WL 5077461, at *8 (dismissing a bad faith claim where the plaintiff made insufficient allegations including that the adjustor spent less than five minutes inspecting the damage at issue); *Sypherd Enterprises, Inc. v. Auto-Owners Ins. Co.*, 420 F. Supp. 3d 372, 380-81 (W.D. Pa. 2019) (holding that, where the plaintiff argued that the insurer acted in bad faith by conducting a brief investigation into alleged water damage, additional investigation would not have changed the insurer's decision to deny coverage and the insurer had not acted in bad faith); *compare Gold v. State Farm Fire and Cas. Co.*, 880 F. Supp. 2d 587, 597-99 (E.D. Pa. 2012) (denying the insurer's motion for summary judgment as to the plaintiff's claim for bad faith for failure to conduct an adequate investigation, where no on-site investigation was ever conducted).

Additionally, a bad faith claim "is generally an independent cause of action separate from the contract claim." *Palmisano*, 2012 WL 3595276, at *11. Thus, "'[r]esolution of a coverage claim on the merits in favor of the insurer requires dismissal of a bad faith claim premised on the denial of coverage, because under the circumstances the insurer necessarily has a reasonable basis for denying benefits.'" *Palek*, 2020 WL 5077461, at *7 (quoting *Gold*, 880 F. Supp. 2d at 597). "'However, if bad faith is asserted as to conduct beyond a denial of coverage, the bad faith claim

is actionable as to that conduct regardless of whether the contract claim survives.'" *Id.* (quoting *Gold*, 880 F. Supp. 2d at 598).

Therefore, to the extent that Plaintiffs' bad faith claim is based on State Farm's denial of coverage under the Policy, the dismissal of Count I for the reasons discussed, supra, requires the dismissal of Count II as well.  However, to the extent that Plaintiffs' bad faith claim is based on State Farm's alleged failure to conduct an adequate investigation, Plaintiffs simply do not assert sufficient factual allegations in their Amended Complaint to support such a cognizable bad faith claim.  Plaintiffs' averments that State farm "den[ied] Plaintiffs' Claim without a reasonable basis" and "with knowledge and/or with a reckless disregard of said denial's lack of a reasonable basis including State Farm's inadequate evaluation and investigation of the Claim," and that State Farm "frivolously refus[ed] to pay" based on the unreasonably denied claim grounded in an inadequate investigation, are nothing more than conclusory statements containing no assertions of fact. (Docket No. 11, ¶ 59(a), (b), (c)).  Nevertheless, Plaintiffs argue that they have also "alleged in detail that State Farm's denial of coverage, based on a completely inadequate visual inspection lasting some ten minutes, constitutes statutory bad faith due to State Farm's failure to evaluate and investigate Plaintiffs' claim objectively and fairly." (Docket No. 18 at 17).  However, the allegations of the Amended Complaint to which Plaintiffs cite in support of that argument simply aver (in various different ways) that Mr. Smilek spent approximately ten minutes of his visit to the Shannon House observing and examining the house, during which time he did not conduct testing or take measurements.  (Docket No. 11, ¶¶ 21-24, 30, 33, 59).

Although the duration of an adjuster's inspection might be relevant to a claim of bad faith, it does not itself demonstrate bad faith.  *See Palek*, 2020 WL 5077461, at *7 (in which a five-minute inspection was held not to demonstrate bad faith); *Gold,* 880 F. Supp. 2d at 599 ("The

length of [the insurer's] review itself does not demonstrate bad faith."). Also, since Plaintiffs allege that the damage at issue was "visible to the naked eye from the interior of the basement and was not obstructed or concealed from view," it is not clear that Mr. Smilek's visual inspection of the wall was unreasonable under the circumstances that Plaintiffs describe. (Docket No. 11, ¶ 9). Thus, even accepting the cited allegations as true, Plaintiffs have not pled sufficient facts in their Amended Complaint to support a cognizable claim of bad faith for State Farm's failure to conduct an adequate investigation.

Therefore, Plaintiffs' statutory bad faith claim, Count II of the Amended Complaint, will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### IV.     Conclusion

For the reasons stated, Defendant's Motion to Dismiss Amended Complaint is granted, and both Counts I and II are dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

Accordingly, Plaintiffs' Amended Complaint in its entirety is dismissed without prejudice to amendment with sufficient facts to state a claim.

An appropriate Order follows.


Dated:  September 30, 2021                         *s/ W. Scott Hardy*
                                                                 W. Scott Hardy
                                                                 United States District Judge

cc/ecf:  All counsel of record